UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| JOSHUA AHAMED,<br><br>    Plaintiff,<br><br>v.<br><br>563 MANHATTAN INC. D/B/A COTTER BARBER, 321 GRAHAM INC. D/B/A COTTER BARBER, and BRIAN BURNAM,<br><br>    Defendants. | Case No.: 19-CV-6388(EK)(CLP) |

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF JOSHUA AHAMED'S MOTION FOR SANCTIONS AGAINST DEFENDANT BRIAN BURNAM UNDER FED. R. CIV. P. 37(E)(2)**

Dated:  March 3, 2023
     Brooklyn, New York

                   By: Zachary J. Liszka, Esq.
                      33 Nassau Avenue, Fl 2
                      Brooklyn, New York 11222
                      347-762-5131
                      zach@employeelawyer.nyc

i

# TABLE OF CONTENTS

**PRELIMINARY STATEMENT** ................................................................................................1

**ARGUMENT** .................................................................................................................3

    I.    S<span style="font-variant:small-caps">tandard of</span> L<span style="font-variant:small-caps">aw</span>................................................................................................3

    II.    A<span style="font-variant:small-caps">pplication of</span> F<span style="font-variant:small-caps">acts to the</span> L<span style="font-variant:small-caps">aw</span>...................................................................5

        *a.*    *The Security Camera Recordings Actually Existed*................................................5

        *b.*    *The Security Camera Recordings Cannot Be Restored or Replaced Through Additional Discovery*..................................................................................................8

        *c.*    *Defendant Burnam's Proffered Reasons for His Complete Failure to Timely Preserve the Security Camera Recordings Demonstrate "Bad Faith" in Light of His Own Testimony, The Testimony of His Witness, Mr. William Essling, Jr. and the Affidavit of the New York City Commission on Human Rights* ........................................................9

**CONCLUSION**..............................................................................................................17

# **TABLE OF AUTHORITIES**

**CASES**

*Allstate Ins. Co. v. Hamilton Beach/Proctor Silex, Inc.*
473 F.3d 450 (2d Cir. 2007) ................................................................................................3

*CBF Industria de Gusa S/A v. AMCI Holdings, Inc.*
2021 WL 4190628 (S.D.N.Y. Aug. 18, 2021) ........................................................ 2, 5, 16

*Fashion Exch. LLC v. Hybrid Promotions, LLC*
2021 WL 1172265 (S.D.N.Y. Mar. 29, 2021).............................................................. 4, 16

*In re Keurig Green Mountain Single-Serve Coffee Antitrust Litig.*
14 MD 2542 (VSB) (SLC) (S.D.N.Y. Apr. 11, 2022)............................................................5

*In re Terrorist Bombings of U.S. Embassies in E. Afr.*
552 F.3d 93 (2d Cir. 2008) .................................................................................................3

*Karsch v. Blink Health Ltd.*
2019 WL 2708125 (S.D.N.Y. June 20, 2019 .....................................................................4

*La Belle v. Barclays Capital Inc.*
2022 WL 121065 (S.D.N.Y. Jan. 13, 2022)................................................................... 4, 5

*Moody v. CSX Transp., Inc.*
271 F. Supp. 3d 410 (W.D.N.Y. 2017) .................................................................... 2, 5, 16

*Ottoson v. SMBC Leasing & Fin, Inc.*
268 F. Supp. 3d 570 (S.D.N.Y. 2017)......................................................................... 4, 16

*R.F.M.A.S., Inc. v. So*
271 F.R.D. 13 (S.D.N.Y. 2010) ..........................................................................................5

*Raymond v. City of New York*
No. 15 Civ. 6885 (LTS) (SLC), 2020 WL 1067482 (S.D.N.Y. Mar. 5, 2020).........................5

**STATUTES**

Fed. R. Civ. P. 37(e)(2) ..............................................................................1, 2, 4, 8, 17

# INTRODUCTION

Plaintiff Joshua Ahamed (herein "Plaintiff Ahamed") submits this memorandum of law in support of his motion to sanction Defendant Brian Burnam (herein "Defendant Burnam") for his intentional spoliation of dispositive evidence in violation Fed. R. Civ. P. 37(e)(2). For the reasons that follow, Plaintiff Ahamed respectfully asks that the Court grant his motion and orders the requested relief.

# PRELIMINARY STATEMENT

Severe sanctions for intentional spoliation of dispositive evidence are warranted against Defendant Brian Burnam under Rule 37(e)(2). Defendant Burnam denies that he deliberately caused the destruction of security camera recordings that captured him sexually molesting Plaintiff Ahamed at work. But, Defendant Burnam's proffered excuses for his failure to take affirmative steps to timely preserve the security camera recordings are demonstrably false, incredible, and grounded in bad faith, warranting a finding that Defendant Burnam consciously disregarded his duty to preserve the evidence with the intent to deprive Plaintiff Ahamed of its use at trial.

Defendant Burnam's proffered excuses are contradicted by his own testimony in this action, and the testimony of his expert witness, Mr. William Essling, Jr., as well as the documentary evidence provided by the New York City Commission on Human Rights.

Further, Defendants' misconduct in the discovery phase of this action also supports this conclusion. *See* ECF 38, July 23, 2021 Order ("it is clear that defendants have made it impossible for plaintiff to [obtain the video recordings during the pendency of this litigation]".

A court can infer an "intent to deprive" under the meaning of Fed. R. Civ. P. 37(e)(2) when the "loss [cannot] be 'credibly explained' other than by bad faith." *CBF Industria de Gusa S/A v. AMCI Holdings, Inc.,* 2021 WL 4190628, at *18 (S.D.N.Y. Aug. 18, 2021) (*citing Moody v. CSX Transp., Inc.*, 271 F. Supp. 3d 410, 431 (W.D.N.Y. 2017).

Plaintiff Ahamed asks this Court to level the playing field at trial by directing the jury to infer that the security camera recordings intentionally spoiled by Defendant Burnam are unfavorable to him. If the Court fails to do so, Defendants have made it clear they intend to attack Plaintiff's ability to recall the minute details of each of the sexually harassing events, in an effort to undermine and dismiss this case, *see* ECF 81. This is something Defendant Burnam would be unable to do had he timely acted to preserve the security camera recordings for trial. Defendant Burnam should not be permitted to obtain a substantial litigation advantage from his own misconduct.

Indeed, the purpose of the adverse inference instruction, as explained in *Moody,* is applicable here. "The prophylactic and punitive rationales for an adverse inference instruction are based on the commonsensical proposition that the drawing of an adverse inference against parties who destroy evidence will deter such destruction, and will properly place the risk of an erroneous judgment on the party that wrongfully

created the risk." *Moody* at 432 (W.D.N.Y. 2017). Here, Defendant Burnam, a sophisticated businessperson, who claims to have spent his "entire life" creating the Cotter Barber businesses, and who stood accused of heinous acts of sexual harassment and assault caught on his shops' security cameras, during the height of the Me Too era in 2019, would have the factfinder believe he "wholeheartedly" thought he had no duty to take affirmative steps to preserve the video in a timely fashion, despite a warning from his own witness, Mr. Essling, Jr., that the video would be erased if he did nothing to timely preserve them. Plaintiff Ahamed submits that Defendant Burnam *consciously disregarded* his duty to timely take affirmative steps to preserve in order to deprive Plaintiff Ahamed of the use of dispositive evidence of Defendant Burnam's guilt at trial. Therefore, the Court must act to level the playing field a trial or risk substantial prejudice to Plaintiff Ahamed at trial.

## ARGUMENT

### I. Standard of Law

"Spoliation is the destruction or significant alteration of evidence, or failure to preserve property for another's use as evidence in pending or reasonably foreseeable litigation." *In re Terrorist Bombings of U.S. Embassies in E. Afr.*, 552 F.3d 93, 148 (2d Cir. 2008) (internal quotation marks omitted) (quoting *Allstate Ins. Co. v. Hamilton Beach/Proctor Silex, Inc.*, 473 F.3d 450, 457 (2d Cir. 2007).

Under Rule 37(e) of the Federal Rules of Civil Procedure, amended in 2015, if electronically stored information ("ESI") that should have been preserved in

3

anticipation of litigation is lost due to a failure to take reasonable steps to preserve it, and it cannot be restored or replaced through additional discovery, the court:

> (1) upon finding prejudice to another party from loss of the information, may order measures no greater than necessary to cure the prejudice; or
>
> (2) only upon finding that the party acted with the intent to deprive another party of the information's use in the litigation may: (A) presume that the lost information was unfavorable to the party; (B) instruct the jury that it may or must presume the information was unfavorable to the party; or (C) dismiss the action or enter a default judgment.

Fed. R. Civ. P. 37(e).

As a threshold matter, "a party seeking spoliation sanctions must necessarily show that the evidence at issue actually existed", *La Belle v. Barclays Capital Inc.*, 2022 WL 121065, at *6 (S.D.N.Y. Jan. 13, 2022) because "spoliation sanctions can be imposed only when the party seeking such sanctions demonstrates that relevant evidence has been lost." *Id.*

A party seeking sanctions under subsection (e)(2) bears the burden to show that the alleged spoliator acted with the intent to deprive the movant of the information for use in the litigation. *Karsch v. Blink Health Ltd.*, 2019 WL 2708125, at *21 (S.D.N.Y. June 20, 2019).

It is well-established in this Circuit that the "intent to deprive" can be inferred when a party has significantly failed in its obligation to preserve and collect documents, *Fashion Exch. LLC v. Hybrid Promotions, LLC*, 2021 WL 1172265, at *6 (S.D.N.Y. Mar. 29, 2021) ("An intent to deprive can be found either from a conscious act

4

of destruction or a conscious dereliction of a known duty to preserve electronic data.") (citing *Ottoson v. SMBC Leasing & Fin, Inc.*, 268 F. Supp. 3d 570, 582-84 (S.D.N.Y. 2017); or when the "loss [cannot] be 'credibly explained' other than by bad faith." *CBF Industria de Gusa S/A v. AMCI Holdings, Inc.,* 2021 WL 4190628, at *18 (S.D.N.Y. Aug. 18, 2021) (*citing Moody v. CSX Transp., Inc.*, 271 F. Supp. 3d 410, 431 (W.D.N.Y. 2017).

"If an intent to deprive is found, no separate showing of prejudice is required, because the finding of intent to deprive supports an inference that the opposing party was prejudiced by the loss of information." *In re Keurig Green Mountain Single-Serve Coffee Antitrust Litig.,* 14 MD 2542 (VSB) (SLC) at 15, (S.D.N.Y. Apr. 11, 2022) (citations and quotations omitted).

"To fulfill its obligation to preserve evidence a litigant must take affirmative steps to prevent inadvertent spoliation." *Raymond v. City of New York*, No. 15 Civ. 6885 (LTS) (SLC), 2020 WL 1067482, at *9 (S.D.N.Y. Mar. 5, 2020) (quotations omitted). "[E]ach party must identify all sources of potentially relevant evidence and implement a 'litigation hold' suspending any routine document destruction or other processes involved in the ordinary course of business that might result in the destruction of potentially relevant evidence." *R.F.M.A.S., Inc. v. So,* 271 F.R.D. 13, 27 (S.D.N.Y. 2010).

II. **Application of Facts to the Law**
    a. *The Security Camera Recordings Actually Existed*

5

Plaintiff Ahamed submits that there is sufficient evidence that the security camera recordings at issue in this motion "actually existed", *La Belle* at 6 (S.D.N.Y. Jan. 13, 2022).

Most persuasive is Defendant Burnam's own admission. When asked to explain why he believed Plaintiff Ahamed's allegations of sexual harassment to be a "joke", Defendant Burnam testified at deposition, "I have video cameras in my store at every angle. There's no such actions happening." Exhibit 1, Burnam Tr. 113:3-12 . *See also* ECF 33-2, Defendants' Response to Plaintiff's First Notices to Admit ("Response: .... It was only after this lawsuit was commenced that it was determined that the video recordings are only saved for 30 days and then erased.").

Also persuasive is the testimony of Defendant Burnam's manager, Ployvipa "Dee" Usaha, who also goes by "Dee Usaha"[1]. Ms. Usaha testified that during Plaintiff Ahamed's period of employment, Defendant Burnam used the Cotter Barber security camera system to record his employees' performing their job duties at Cotter Barber for "training purposes". Exhibit 2, Usaha Tr. 76:10-25, 77:2-14. And, Defendant Burnam testified at deposition that he "trained" Plaintiff Ahamed personally for "30 days straight". Exhibit 1, Burnam Tr. 96:14-17.

Moreover, Plaintiff Ahamed submitted written testimony that all of the sexually harassing conduct that he could presently recall occurred in line of sight of the Cotter

---

[1] https://www.linkedin.com/in/dee-usaha-a00467b1?original_referer=https%3A%2F%2Fwww.google.com%2F (last accessed February 28, 2023).

Barber security cameras. Exhibit 3, Plaintiff's Supp. Response to Defendants' Interrogatory No. 4.

And, two former employees of Cotter Barber put forth sworn declarations describing the sexually harassing events they witnessed Defendant Burnam subject Plainiff Ahamed to at Cotter Barber. Exhibit 4, June 30, 2020 Decl. of Darron Lofton and June 11, 2020 Decl. of Jacob Lanza.

And, at deposition, Mr. Lanza described in graphic detail the sexual harassment he witnessed Defendant Burnam subject Plaintiff Ahamed to at Cotter Barber, which he said was the "most unprofessional" thing he had seen "in his life", that made him feel "hurt and confused, and "embarrassed to see [Plaintiff Ahamed]… a 22-year old [who had just] come to New York City and [to] look[] for a job" to "be treated like that". Exhibit 5, Lanza Tr. 30:20-25, 31:2-25, 32:2-6, 34:19-25, 36:7-12, 38:2-11, 39:10-25, 40:2-10, 41:14-25, 42:2-15, 43:2-25, 44:2-25, 45:2-14. Moreover, Mr. Lanza testified that Defendant Burnam would "sit downstairs and watch the camera" in order to "try to pit you against other employees. And he created a very weird manipulative scene. He would like to watch the camera and try to find out something bad about people." Exhibit 5, Lanza Tr. 63:10-25, 64:2-4. And, Mr. Lanza testified that the instances of sexual harassment that he witnessed would likely have been picked up by the Cotter Barber security cameras. Exhibit 5, Lanza Tr. 78:24-25, 79:2-18.

In sum, Plaintiff Ahamed submits that the above evidence sufficiently demonstrates that security camera recordings at issue actually existed.

7

> b. *The Security Camera Recordings Cannot Be Restored or Replaced Through Additional Discovery*

Plaintiff Ahamed submits that there is sufficient evidence that the security camera recordings at issue are "lost and cannot be restored or replaced with additional discovery". Fed. R. Civ. P. 37(e).

Most persuasive is Defendants' agents' admissions. During discovery, Defendants submitted two sworn declarations from their purported expert, Brian Gunther, dated February 2, 2022 and February 15, 2022. *See* ECF 47-1 and 48-1. In the February 2, 2022 declaration, Mr. Gunther states that he used "Easeus recovery software" and "DiskInternals recovery software" to scan the DVR unit from the 321 Graham Avenue Cotter Barber security camera system. Although Mr. Gunther does not indicate when the scans were performed, he concludes that "there are no video files stored on this DVR that (sic)was created from May 4, 2019 to July 4, 2019. ECF 47-1. And in his February 15, 2022 declaration, Mr. Gunther states that "I inspected the DVR from 563 Manhattan Ave, Brooklyn, NY", ECF 48-1, which is the physical address of one of the Cotter Barber locations, and states he "removed the hard drive from the DVR and installed it on a test server. The hard drive is inoperable and no data can be retrieved from it." *Id.*

In sum, Plaintiff Ahamed submits that this evidence sufficiently demonstrates that the video recordings at issue are lost and cannot be replaced with additional discovery.

8

    c. *Defendant Burnam's Proffered Reasons for His Complete Failure to Timely Preserve the Security Camera Recordings Demonstrate "Bad Faith" in Light of His Own Testimony, The Testimony of His Witness, Mr. William Essling, Jr. and the Affidavit of the New York City Commission on Human Rights*

        i.    <u>The Notice to Preserve the Security Camera Recordings at Issue Was Emailed to Defendant Burnam on July 3, 2019</u>

On July 3, 2019, Plaintiff Ahamed commenced a lawsuit against Defendant Burnam at the New York City Commission on Human Rights. *See* <u>Exhibit 6</u>. The complaint in the NYCCHR action alleged that Defendant Burnam had groped and slapped his buttocks, tapped him with a glass bottle in the groin area, and texted his manager that Plaintiff should be fired because he was a "fag", and told him to be "gay… but less gay" on the weekend of the New York City Pride Parade in 2019, while Plaintiff was working at Cotter Barber. *See* <u>id.</u> The complaint also alleged that the Cotter Barber security camera recordings would demonstrate the exact times and dates of the foregoing incidents; that the security camera system was in Defendant Burnam's control; and that Defendant Burnam was on notice to preserve and not destroy the security camera recordings. *See* <u>id.</u> Further, the NYCCHR complaint was sworn to be true and correct based upon the personal knowledge of Plaintiff Ahamed in the presence of a notary public. <u>Id.</u> And, the complaint contained the seal and signature of that notary public. <u>Id.</u>

Later, that same day, July 3, 2019, counsel for Plaintiff Ahamed emailed a copy of the NYCCHR complaint to Defendant Burnam. *See* <u>Exhibit 7</u>. In that same email,

9

counsel included a summary of the claims against Defendant Burnam as alleged in the NYCCHR complaint. Id. And, in that email, counsel also provided a written notice to preserve (hereinafter "Notice to Preserve"). Id. The Notice to Preserve directed Defendant Burnam to

> preserve and not destroy all documents or other evidence that pertain to these claims, including, but not limited to, all video surveillance of the premises of 563 Manhattan Ave and 321 Graham Ave between May 2019 and July 3, 2019, copies of all versions of the employee handbook, and payroll records of Mr. Ahamed. Failure to preserve and not destroy the foregoing may result in serious sanctions against Respondents, including an adverse inference that the evidence not preserved or destroyed, if reviewed, would demonstrate the truth of the claims against Respondents. See e.g. Sarko v. Associated Supermarket, 2017 NY Slip Op 07975 [N.Y. App. Div. 2017].
>
> Id.

The email also recommended that Defendant Burnam retain counsel and have that counsel contact counsel for Plaintiff to discuss further. Id.

    ii.    <u>Defendant Burnam Admits he Read the Notice to Preserve the Security Camera Recordings at Issue on July 3, 2019</u>

Defendant Burnam admits he read the Notice to Preserve on the same day it was sent, July 3, 2019. Exhibit 1, Burnam Tr. 99:2-25, 100:2-25, 101:2-14 ("Q: On the day the [Notice to Preserve] was sent, did you read it? A: Yeah, I—I glanced over it. I read it.").

    iii.    <u>Assuming the Notice to Preserve Was a "Prank" Demonstrates "Bad Faith" in Light of the Fact That Defendant Burnam, a Sophisticated Businessperson, Accused of Sexual Harassment, Claims to Have "Wholeheartedly" Apologized the Next Morning, Plaintiff Quit Three</u>

10

<u>Days Later, Defendant Burnam Never Contacted Counsel to Verify, and Defendant Was Served With a Notice from the New York City Commission on Human Rights Stating That Plaintiff Ahamed Was Pursuing This Action Against Him in Court</u>

Defendant Burnam holds himself out as a sophisticated businessperson. He testified that he is the "sole proprietor" of Cotter Barber, which he testified is an "equal parts barbershop, retail, and café." <u>Exhibit 1</u>, Burnam Tr. 13:4-8, which has been in operation since 2016 in the affluent Brooklyn neighborhood of Williamsburg. <u>Id</u>, Burnam Tr. 12:18-23; 50:16-17. Defendant Burnam testified that he had worked his "entire life to create [Cotter Barber]". <u>Id.</u> In 2015, Defendant Burnam registered a trademark for the use of the name "Cotter Barber" with the U.S. Copyright Office[2]. And, Defendant Burnam testified that within a few years, he had expanded the business to two locations in Williamsburg, <u>Id</u>, Burnam Tr. 12:21-23. Further, Cotter Barber was featured prominently in the New York Times[3] as an example of a growing trend of combination coffee shop/barber shop. And, during the pendency of this litigation, another business, High Horse Salon[4], associated itself with Cotter Barber, expanding the services offered to customers at the 563 Manhattan Avenue Cotter Barber location. In 2019 alone, Defendant Burnam testified that Cotter Barber employed 50 people. <u>Id.</u>, Burnam Tr. 31:14-25, 32:2-8. And, Defendant Burnam testified that in 2019 he directly

---

[2] https://trademarks.justia.com/865/65/cotter-86565376.html (last accessed February 29, 2023).
[3] https://www.nytimes.com/2015/06/07/fashion/you-want-a-cappuccino-with-that-haircut.html (last accessed February 29, 2023)
[4] http://www.highhorsesalon.com/

or indirectly interviewed, hired, fired, trained, set work schedules, rates of pay, assigned job duties, and managed these 50 or so Cotter Barber employees. Id, Burnam Tr. 13:18-25; 14:2-8, 16:22-25, 17:2-25; 23:2 through 31:13. And, he also testified that he co-authored a 45-page "employee handbook" for Cotter Barber. Id, Burnam Tr. 43:20-25.

Defendant Burnam would have the factfinder believe that despite his business sophistication and despite all the hard work he put toward creating his businesses, upon reading the Notice to Preserve on July 3, 2019, Defendant Burnam "laughed out loud" because he "wholeheartedly" thought it was a "prank", Id, Burnam Tr. 99:2 through 101:14. And, from this, he did not believe he had a duty to take any timely affirmative steps to preserve the security camera recordings. Id, Burnam Tr. 101:10-25, 102:2-18.

However, the testimony Defendant Burnam provided later at deposition undermines his purported "wholehearted" belief that it was a prank. The very next morning, July 4, 2019, Defendant Burnam testified that he spoke to Plaintiff Ahamed at work about the Notice to Preserve and NYCCHR complaint he received the night before, and during that alleged conversation, Defendant Burnam testified that he apologized "wholeheartedly" for making Plaintiff feel "uncomfortable in any way over the entirety of his employment". Id, Burnam Tr. 80:21-25, 81:2-25. And, Defendant Burnam further testified that when asked about the NYCCHR complaint and Notice to Preserve , Plaintiff Ahamed "made no comment on it." Id, Burnam Tr. 114:19-23.

12

Defendant Burnam would have the factfinder believe that, as a sophisticated businessperson who had worked his whole life to create his businesses, he continued to believe the Notice to Preserve was a "prank", even after Plaintiff quit three days later, on July 6, 2019. Exhibit 8, Text Between the Parties ("I'm sorry that it did not work out and you have decided to leave."). And, he continued to believe it even though he never verified it with counsel for Plaintiff Ahamed. Exhibit 1, Burnam Tr. 104:25, 105:2-4. 106:16-25, 107:2-4. And, he continued to believe it even after the Associate Director of the New York City Commission on Human Rights served a Notice on his business addresses on August 15, 2019, stating that Plaintiff Ahamed was "pursuing [his claims against Defendant Burnam] in court". Exhibit 9, NYCCHR Notice of Administrative Closure and Affidavit of Service.

In fact, Defendant Burnam would have the factfinder believe that *despite all the bright-red, flashing, danger signs that this was definitely not a "prank",* as a sophisticated businessperson who spent his "entire life creating his business", he continued to "wholeheartedly" believe it was simply a "prank".

      iv.    <u>Assuming the Security Camera Recordings Would Last "Indefinitely" on the DVRs Demonstrates "Bad Faith" in Light of the Fact That Defendant Burnam Was Notified by His Own Vendor on August 3, 2019 That the DVR Would Overwrite Every 60 to 90 Days</u>

Next, Defendant Burnam claims he was "under the impression" the security camera recordings would be preserved "indefinitely" on the Cotter Barber security camera systems. Exhibit 1, Burnam Tr. 118:5-8. And therefore, he testified he took no

13

affirmative steps to timely preserve until some 120 days later when Plaintiff Ahamed commenced this instant action; and only then, he claims, did he realize the security camera recordings had been erased. *See* ECF 33-2, Defendants' Response to Plaintiff's First Notices to Admit ("Response: …. Defendant Burnam believed that the [Cotter Barber] security cameras preserved recordings for an indefinite or lengthy period of time. It was only after this lawsuit was commenced that it was determined that the video recordings are only saved for 30 days and then erased.").

Defendant Burnam would have the factfinder believe that his assumption was reasonable, in light of the fact that he claimed (1) "no working knowledge" of the security camera system, Exhibit 10, Defendants' Amended Responses to Plaintiff's Second Set of Interrogatories, Response No. 2; (2) he claimed not to have received any instruction or support on the operation of the security camera systems, id; (3) he did not research the systems online or submit any request for help online, Id, Response No. 4 and 5; and (4) *he claims he did not contact any security camera expert for assistance, until about 120 days later. See* Exhibit 1, Burnam Tr. 120:7-25, 121:2-16 ("I reached out to several companies, and it wasn't immediately upon receiving this [Notice to Preserve]. It was once I retained my lawyer [after the lawsuit was commenced in November 12, 2019]. We started to look into how -- how to preserve that stuff.").

Now consider Mr. Essling, Jr.'s testimony. Exhibit 11, Essling, Jr. Tr. 100:3-9, 113:13-22, 114:19-25, 116:9-25, 117:2-3, 120:14-25, 121:2-10. ("Q: Okay. [the proposed affidavit] reads: 'At this time [on August 2, 2019], I also notified Mr. Brian Burnam that

14

given the capacity of the system, video would only be saved for 60 to 90 days', do you see that? A: Yes. Q: Okay. Is it true--is that statement true? A: Yeah. Yeah. Q: Okay. A: Like a DVR only records as much you have. So you have to give -- .... So you have to give a general kind of statement. You have to give a statement. You can't just say nothing.").

Indeed, Mr. Essling, Jr. had no reason to lie about telling Defendant Burnam—*on August 2, 2019*--that if he took no action, security camera recordings at Cotter Barber would be erased in 60 to 90 days. Mr. Essling, Jr. testified that in over 22 years of installing security camera systems, Exhibit 11, Essling, Jr. Tr. 22:22-24, he has given the same instruction to each of his customers; and Essling, Jr. testified about how a customer such as Defendant Burnam could easily back up or preserve video recordings using a flash drive (contrary to Defendants' counsel's repeated claims during discovery); and Mr. Essling, Jr. testified that he told Defendant Burnam—*on August 2, 2019*--if he needed help with his security camera system to just call him, but that Defendant Burnam did not call him. Exhibit 11, Essling, Jr. Tr. 45:13-25, 46:2-8, 48:17-25, 49:2-25; 50:2-14, 51:2-15, 58:11:25; 59:2-10; 63:6-25, 64:2-25, 67:10-25, 68:2-19.

      v.     <u>Defendants' Additional Discovery Misconduct During the Course of the Instant Action Supports Sanctions</u>

Moreover, during the course of the instant litigation, Defendants, guided by counsel, admittedly failed to take offline or otherwise timely backup the DVR units which had stored the security camera recordings; instead permitting them to run

15

continuously at the shops during the pendency of the litigation, *see* ECF 33 and 34. And, when Defendants were ordered to produce the DVR units to Plaintiff Ahamed for forensic inspection, Defendants' defied the Court's order, *see id*, compelling the Court to hold that "it is clear that defendants have made it impossible for plaintiff to [obtain the DVR units]", ECF 38.

In sum, Plaintiff Ahamed submits that Defendant Burnam significantly failed in his obligation to timely preserve the video recordings at issue in this motion, *see Fashion Exch. LLC v. Hybrid Promotions, LLC*, 2021 WL 1172265, at *6 (S.D.N.Y. Mar. 29, 2021) (citing *Ottoson v. SMBC Leasing & Fin, Inc.*, 268 F. Supp. 3d 570, 582-84 (S.D.N.Y. 2017), and the "loss [cannot] be 'credibly explained' other than by bad faith." *CBF Industria de Gusa S/A v. AMCI Holdings, Inc.,* 2021 WL 4190628, at *18 (S.D.N.Y. Aug. 18, 2021) (*citing Moody v. CSX Transp., Inc.*, 271 F. Supp. 3d 410, 431-2 (W.D.N.Y. 2017) ("While knowing they had a duty to preserve the event recorder data, defendants allowed the original data on the event recorder to be overwritten, and destroyed or recycled Lewandowski's laptop without ever confirming that the data had been preserved in another repository. Finally, their failure to make any effort over the course of four years to confirm that the data was properly preserved in the Vault undercuts the reasonableness and credibility of their asserted belief that the material was still accessible. On this record, the Court finds that defendants acted with the intent to deprive Moody of the use of the event recorder data."). In addition to the substantial evidentiary hardship that this intentional destruction of dispositive evidence has

16

placed upon Plaintiff Ahamed, it has also required his counsel to expend substantial time and expense pursuing ultimately fruitless efforts to recover the spoiled evidence, something that would not have occurred had Defendant Burnam obeyed his lawful duty to timely preserve in the first instance.

## CONCLUSION

Based upon the foregoing evidence and governing case law, Plaintiff Ahamed respectfully requests the Court issuing an Order:

(1) finding that Defendant Brian Burnam has intentionally spoiled evidence in violation of Fed. R. Civ. P. 37(e)(2);

(2) directing that the jury infer from Defendant Burnam's spoliation of the evidence that the evidence was unfavorable to Defendants; and,

(3) awarding reasonable attorneys' fees and costs related to the spoliation, on application of Plaintiff.

Dated:   March 3, 2023
         Brooklyn, New York

                                                          Respectfully submitted,

By: _____
Zachary J. Liszka, Esq.
33 Nassau Avenue, Fl 2
Brooklyn, New York 11222
347-762-5131
zach@employeelawyer.nyc

17