UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------X
JOSHUA AHAMED,

                      Plaintiff,

          -against-                            **MEMORANDUM AND ORDER**
                                                                    19 CV 6388 (EK) (CLP)

563 MANHATTAN INC., *d/b/a* COTTER
BARBER, *et al.*,

                      Defendants.
----------------------------------------------------------X
**POLLAK**, United States Magistrate Judge:

        On November 12, 2019, plaintiff Joshua Ahamed ("plaintiff") commenced this action against defendants 563 Manhattan Inc., d/b/a Cotter Barber, 321 Graham Inc., d/b/a Cotter Barber, and Brian Burnam ("Burnam") (collectively, "defendants"), bringing claims of discrimination, pursuant to Title VII of the Civil Rights Act of 1964 ("Title VII"), 28 U.S.C. §§ 2000, et seq., and the New York City Human Rights Law ("NYCHRL"), NYC Admin. Code §§ 8-101, et seq., as well as a claim of common law battery based on defendant Burnam's alleged non-consensual touching of plaintiff. (ECF No. 1). On February 6, 2020, plaintiff filed an Amended Complaint, adding a Fourth Cause of Action, alleging that defendants filed a retaliatory counterclaim seeking punitive damages in violation of the NYCHRL. (FAC[1] ¶¶ 56–68).

        Currently pending before this Court are three motions related to discovery and discovery conduct: (1) plaintiff's motion for an Order finding that defendant Burnam intentionally spoliated certain evidence under Rule 37(e)(2) of the Federal Rules of Civil Procedure (the "Spoliation Motion") (ECF No. 110); (2) plaintiff's motion for sanctions against defendants'

---

[1] Citations to "FAC" refer to plaintiff's First Amended Complaint, filed February 6, 2020. (ECF No. 11).

1

counsel, which "is based on his filing of a sur-reply motion" in connection with the Spoliation Motion (the "Sanctions Motion") (ECF No. 118); and (3) defendants' motion to compel plaintiff to reimburse their deposition transcript costs (the "Motion to Compel") (ECF No. 121). The Court addresses each motion in turn.

## BACKGROUND

Plaintiff Ahamed alleges that beginning in approximately June of 2019, he was employed by defendants as a barista at the Cotter Barber locations at 563 Manhattan Avenue, Brooklyn, N.Y. and at 321 Graham Avenue, Brooklyn, N.Y. (FAC ¶ 16). According to the First Amended Complaint, defendant Burnham hired plaintiff to work at the Cotter Barber locations, set his work schedule and rate of pay, and monitored plaintiff using security cameras in the locations. (Id. ¶¶ 20–22, 24). Plaintiff alleges that on at least four occasions, between May 18, 2019, and July 2, 2019, defendant Burnham engaged in non-consensual sexual touching of plaintiff's buttocks while plaintiff was working at the Cotter Barber locations. (Id. ¶ 26). Plaintiff claims that these events were captured on the security cameras in the locations. (Id. ¶ 27). Plaintiff also alleges that on July 3, 2019, after Burnham tapped plaintiff's genitals with a large glass bottle in front of another co-worker, plaintiff sent a notice to Burnham through email, directing him to preserve and not destroy all evidence, including the security camera footage. (Id. ¶¶ 30–31).

Plaintiff brings claims of unlawful discrimination, pursuant to Title VII, alleging discrimination through the creation and maintenance of a hostile work environment, which resulted in plaintiff's constructive discharge (First Cause of Action); violations of the NYCHRL for discrimination and hostile work environment (Second Cause of Action); battery against defendant Burnham for his non-consensual and offensive bodily contact (Third Cause of Action); and a claim that by filing a frivolous counterclaim seeking punitive damages, defendants

2

unlawfully retaliated against plaintiff for bringing this action, in violation of N.Y.C. Admin. Code. (Fourth Cause of Action).

## SPOLIATION MOTION

By Notice of Motion filed March 3, 2023, plaintiff Ahamed moves for an Order, pursuant to Fed. R. Civ. P. 37(e)(2), finding that defendant Burnam intentionally spoliated evidence, directing the jury that they may draw an adverse inference from the missing evidence, and awarding plaintiff fees and costs. (Spoliation Mot. at 1). Plaintiff asserts that defendant Burnam deliberately destroyed the security camera recordings that captured Burnam sexually touching plaintiff at work. (Pl.'s Mem.[2] at 1).

I. Legal Standard[3]

Rule 37 of the Federal Rules of Civil Procedure allows courts to impose sanctions on parties that fail to comply with their discovery obligations, including by destroying or failing to preserve necessary evidence in certain circumstances. Fed. R. Civ. P. 37(b)(2); see West v. Goodyear Tire & Rubber Co., 167 F.3d 776, 779 (2d Cir. 1999). Even where there has been no explicit discovery order issued, the court has the power to preserve the integrity of proceedings by, among other things, imposing sanctions for the spoliation of evidence. Fed. R. Civ. P. 37(e).

Spoliation is the "destruction or significant alteration of evidence, or the failure to preserve property for another's use as evidence in pending or reasonably foreseeable litigation." West v. Goodyear Tire & Rubber Co., 167 F.3d at 779. A party has the obligation to preserve evidence when the party is on notice "that the evidence is relevant to litigation or when a party should have known that the evidence may be relevant to future litigation." Fujitsu Ltd. v.

---

[2] Citations to "Pl.'s Mem." refer to plaintiff's Memorandum of Law filed in support of plaintiff's Spoliation Motion. (ECF No. 110-1).
[3] Caselaw quotations in this Order accept all alterations and omit internal quotation marks, citations, and footnotes unless otherwise noted.

Federal Express Corp., 247 F.3d 423, 436 (2d Cir. 2001); accord Barsoum v. N.Y.C. Hous. Auth., 202 F.R.D. 396, 400 (S.D.N.Y. 2001) (holding that a party is under an obligation to retain documents and other evidence that it knows may be relevant to a pending or future litigation). This obligation to preserve relevant documents exists whether or not the documents have been specifically requested in a demand for discovery, Barsoum v. N.Y.C. Hous. Auth., 202 F.R.D. at 400, and it applies equally to physical evidence and electronically stored information, Medcenter Holdings Inc. v. Web MD Health Corp., No. 20 CV 53, 2023 WL 5963616, at *3 (S.D.N.Y. Sept. 14, 2023).

     One sanction for spoliation is an adverse inference ruling, which requires the jury to view the missing evidence as unfavorable to the party responsible for its destruction.  Fed. R. Civ. P. 37(e)(2).  A party seeking an adverse inference ruling based on the spoliation of evidence must establish "(1) that the party having control over the evidence had an obligation to preserve it at the time it was destroyed; (2) that the records were destroyed [or not preserved] with a culpable state of mind; and (3) that the destroyed evidence was relevant to the party's claim or defense such that a reasonable trier of fact could find that it would support that claim or defense." Elavon, Inc. v. Northeast Advance Techs., Inc., No. 15 CV 7985, 2022 WL 1175039, at *1 (S.D.N.Y. Apr. 20, 2022) (quoting Chin v. Port Auth. of New York & New Jersey, 685 F.3d 135, 162 (2d Cir. 2012)).  If those elements are established, the district court may exercise its discretion to grant an adverse inference jury instruction that "would serve the threefold purpose of (1) deterring parties from destroying evidence; (2) placing the risk of an erroneous evaluation of the content of the destroyed evidence on the party responsible for its destruction; and (3) restoring the party harmed by the loss of evidence helpful to its case to where the party would

have been in the absence of spoliation." Chin v. Port Auth. of New York & New Jersey, 685 F.3d at 162 (quoting Byrnie v. Town of Cromwell, 243 F.3d 93, 107 (2d Cir. 2001)).

II. Analysis

    A.    Existence and Relevance of Recordings

As an initial matter, plaintiff acknowledges that as the party seeking spoliation sanctions, he must "necessarily show that the evidence at issue actually existed." (Pl.'s Mem. at 4 (quoting La Belle v. Barclays Capital, Inc., 340 F.R.D. 74, 82 (S.D.N.Y. 2022))). Moreover, plaintiff is required to show that a reasonable trier of fact would find that the destroyed evidence supported plaintiff's claims. Chin v. Port Auth. of New York & New Jersey, 685 F.3d at 162. For these purposes, "[t]he concept of 'relevance' encompasses not only the ordinary meaning of the term, but also that the destroyed evidence would have been favorable to the movant." Elavon, Inc. v. Northeast Advance Techs., Inc., 2022 WL 1175039, at *4 (quoting Zubulake v. UBS Warburg LLC, 229 F.R.D 422, 431 (S.D.N.Y. 2004)).

Plaintiff contends that defendant Burnam, in refuting plaintiff's claims of sexual harassment, testified at his deposition that he had "video cameras in my store at every angle. There's no such actions happening." (Pl.'s Mem. at 4 (quoting Ex. 1, Burnam Tr.[4] at 113)). Other witnesses confirmed the existence of the security camera system during the time of plaintiff's employment, including Ployvipa "Dee" Usaha, the manager, who testified that defendant Burnam used the security cameras to record his employees at work for "'training purposes.'" (Id. (quoting Ex. 2, Usaha Tr.[5] at 76–77)). Another witness, Jacob Lanza, testified

---

[4] Citations to "Ex. 1, Burnam Tr." refer to the transcript of defendant Brian Burnam's deposition testimony taken June 6, 2022, and attached to plaintiff's Memorandum as Exhibit 1. (ECF No. 110-3).

[5] Citations to "Ex. 2, Usaha Tr." refer to the transcript of Ployvipa Usaha's deposition testimony, taken June 16, 2022, and attached to plaintiff's Memorandum as Exhibit 2. (ECF No. 110-4).

that he had witnessed the harassment of plaintiff and that defendant Burnam would watch the video to "try to find out something bad about people." (Ex. 5, Lanza Tr.[6] at 63:21–64:4).

Although defendant does not dispute that he had an obligation to preserve evidence about the underlying incidents, he contends that he had nothing to preserve at the 321 Graham location because "there were no cameras installed and functioning during the entire time of Ahamed's employment." (Defs.' Mem.[7] at 3, 7). According to the testimony of William Essling, Jr., the installer of the security system at 321 Graham Avenue, he did not install the camera at that location until August 2, 2019 – one month after plaintiff quit his employment. (Id. at 7). Essling's testimony is corroborated by the invoice for the installation of the system at 321 Graham Avenue, which is dated August 2, 2019, the date the installation was completed, along with three photographs dated May 8, July 12, and July 15, 2019. (Id. (citing ECF Nos. 113-4, 113-5)). These photographs show video cable, but no installed cameras. (Id.) since there were no cameras installed at the time of the incident. (Id.)

With respect to 563 Manhattan Avenue, defendant concedes that there where cameras operating during that relevant period, but maintains that there is no evidence to show that those cameras would have captured the interactions between plaintiff and defendant Burnam. (Id. at 1). Defendant argues that plaintiff has presented no testimony from anyone that they ever viewed the video footage or that Burnam affirmatively took steps to erase the recordings. (Id. at 3). Defendant contends that since plaintiff cannot recall when or how many times, or even where the unwanted touching occurred, even if the footage had been preserved, he has not established that "it would not have shown anything." (Id.) In other words, defendants argue that plaintiff

---

[6] Citations to "Ex. 5, Lanza Tr." refer to the transcript of Jacob Lanza's deposition testimony, taken November 3, 2020, and attached to plaintiff's Memorandum as Exhibit 5. (ECF No. 110-7).

[7] Citations to "Defs.' Mem." refer to defendants' Memorandum of Law filed in opposition to plaintiff's Spoliation Motion. (ECF No. 113).

cannot prove that the video would have corroborated his claims or even that the location of the camera would have captured the alleged assault.  (Id. at 5–6).

In his Reply Memorandum (ECF No. 114), plaintiff notes that in his deposition, defendant Burnam refuted plaintiff's claims and asserted that they were merely "a joke," explaining that "I have video cameras in my store on every angle.  There's no such actions happening.  So I – I assumed it was a joke."  (Pl.'s Reply at 14 (quoting Ex. 1, Burnam Tr. at 113)).  Plaintiff also points out that defendant Burnam admitted that he monitored plaintiff at work using these security cameras, and that he trained plaintiff for "30 days straight" using the security footage.  (Id. at 15(quoting Ex. 1, Burnam Tr. at 96)).  Another witness, Ms. Usaha, testified that the security cameras were used by Burnam for training purposes.  (Ex. 2, Usaha Tr. at 76–77)).  Plaintiff also argues that since the incidents complained of occurred at the barista counter, where he worked as a barista, it can be inferred that the security cameras were pointed at the barista counter and would have recorded any interactions at that counter.  (Id. at 15).  The Court agrees and concludes that plaintiff has established that there were video cameras operating in the 563 Manhattan Avenue Cotter Barber location during the time of his employment.

To the extent defendants argue that plaintiff has no witness to testify as to what was depicted on the videos, if anything, and therefore plaintiff has not shown that the recordings are relevant to his claims, courts have held that such a degree of proof is not necessary in this context.  See Herman v. City of New York, 334 F.R.D. 377, 389–90 (E.D.N.Y. 2020) (stating that courts must "[k]eep[] in mind that holding the prejudiced party to too strict a standard of proof regarding the likely contents of the destroyed evidence would subvert the prophylactic and punitive purposes of the adverse inference, and would allow parties who have intentionally destroyed evidence to profit from that destruction" (quoting Byrnie v. Town of Cromwell, Bd. of

Educ., 243 F.3d at 110)).  Rather, "[a] party may establish relevance by adducing sufficient evidence from which a reasonable trier of fact could infer that the destroyed or unavailable evidence would have been of the nature alleged by the party affected by its destruction." Distefano v. Law Offs. of Barbara H. Katsos, PC, No. 11 CV 2893, 2017 WL 1968278, at *22 (E.D.N.Y. May 11, 2017) (quoting Harakabi v. SanDisk Corp., 275 F.R.D. 414, 420 (S.D.N.Y. 2010)).

As noted above, plaintiff has established not only the existence of recordings, but also a "sufficient likelihood" that they would have depicted Burnam's alleged conduct had it occurred. Herman v. City of New York, 334 F.R.D. at 389–90.  That is enough for this Court to conclude that the recordings constitute evidence relevant to plaintiff's claims in this case.  Id.  To require anything further would put the cart before the horse by effectively requiring plaintiff to establish that the assaults in fact occurred.

      B.      Loss of Recordings

Plaintiff has also presented sufficient evidence to demonstrate that the security camera recordings are lost and cannot be restored.

As an initial matter, the Court notes that this is not the first time that the issue of these security recordings has been brought to the attention of the Court.  On December 10, 2020, during the course of a status conference in the case, the Court heard argument on the parties' dispute over the burden and expense of producing copies of the security cameras video recordings and directed defendants to provide a copy of the hard-drive at plaintiff's expense. (Minute Entry, dated Dec. 11, 2020).  In March 2021, plaintiff informed the Court that a professional copy of the recordings was not required and that if defendants would supply plaintiff with a copy loaded onto a USB drive, plaintiff would find that sufficient.  (See Minute Entry, dated Mar. 19, 2021).  The Court Ordered the parties to file a status report no later than

May 3, 2021, indicating whether the copying had been successful. (Id.) When defendants indicated that they were unable to provide a copy and concerned that they might damage the records, the Court directed that the DVR units be made available for professional copying by May 24, 2021. (Electronic Order, dated May 10, 2021).

Thereafter, plaintiff attempted to arrange a pickup of the units, but defendants refused to allow plaintiff to physically remove the equipment and take it off-site for copying, prompting plaintiff to move to compel defendants to produce the units for copying and to bear the costs of copying. (ECF No. 33). For the first time in their response to plaintiff's motion, defendants informed the Court that "[t]he hard-drive imaging and data, *if it still exists*, is stored somewhere in [d]efendants' recorders and not accessible to [d]efendants. A specialist is needed." (ECF No. 34 at 3 (emphasis added)). The Court then Ordered defendants to arrange for and pay for a professional copy of the video surveillance to be made. (ECF No. 38). The Court also denied plaintiff's motion for sanctions at that time pending a determination as to whether the recordings could be retrieved. (Id.)

Defendants then submitted sworn declarations from Brian Gunther, dated February 2, 2022 and February 15, 2022, in which Mr. Gunther stated that he used "Easeus recovery software," and "DiskInternals recovery software" to scan the DVR unit from 321 Graham Avenue. (Pl.'s Mem. at 8). Based on these scans, he determined that "there are no video files stored on this DVR that was [sic] created from May 4, 2019 to July 4, 2019." (Id. (citing ECF No. 47-1)). In his February 15, 2022, declaration, Mr. Gunther stated that he removed the hard drive from the DVR at the 563 Manhattan Avenue location and determined that "[t]he hard drive is inoperable and no data can be retrieved from it." (Id.) According to defendants, the

9

examination of the hard drive at 563 Manhattan Avenue occurred after Hurricane Ida flooded the basement of the locations.[8]

Thus, it is clear that the recordings are no longer available and cannot be retrieved.

C. Obligation to Preserve

A party seeking an adverse inference ruling must demonstrate that the party in possession of the evidence was under an obligation to preserve that evidence at the time of destruction. See, e.g., Elavon, Inc. v. Northeast Advance Techs., Inc., 2022 WL 1175039, at *1. Federal and state common law, as well as various procedural rules governing litigation, impose upon litigants the duty "to preserve documents and property that could potentially serve as evidence in a lawsuit." R.F.M.A.S., Inc. v. So, 271 F.R.D. 13, 21 (S.D.N.Y. 2010). The Federal Rules of Civil Procedure provide the protocols for complying with the duty to preserve evidence and the timing of discovery requests and responses. Id.; see also Maracich v. Spears, 570 U.S. 48, 90 (2013) (recognizing the connection between Rule 26 and a party's "duty to preserve material evidence").

The obligation to preserve evidence arises when the party "has notice that the evidence is relevant to litigation — most commonly when suit has already been filed, providing the party with express notice." Kronisch v. United States, 150 F.3d 112, 126 (2d Cir. 1998); see also Fujitsu Ltd. v. Federal Exp. Corp., 247 F.3d at 436. The duty to preserve may also attach prior to the initiation of formal proceedings, at the moment when litigation becomes "reasonably foreseeable." Byrnie v. Town of Cromwell, Bd. of Educ., 243 F.3d at 107. Thus, several courts in this district have found that internal complaints may be sufficient to trigger the duty to

---

[8] The Court notes that Hurricane Ida occurred in 2021. Had defendants retrieved the footage when the litigation commenced or when the footage was first requested, it would not have been impacted by any damage that may have resulted from the hurricane.

10

preserve. See, e.g., In re Vitamin C Antitrust Litig., No. 05 CV 453, 2013 WL 504257, at *9 (E.D.N.Y. Feb. 8, 2013) (noting that "the law is clear that the obligation to preserve evidence arises when the party has notice that the evidence is relevant to litigation, and that this obligation may arise prior to the filing of a suit if the litigation is reasonably anticipated"); F.D.I.C. v. Malik, No. 09 CV 4805, 2012 WL 1019978, at *1 n.1 (E.D.N.Y. Mar. 26, 2012) (holding that the duty to preserve arose when attorneys who allegedly destroyed documents represented the plaintiff in the underlying transaction at issue); In re Semrow, No. 03 CV 1142, 2011 WL 1304448, at *3 (D. Conn. Mar. 31, 2011) (holding that the duty to preserve vessel arose prior to commencement of suit because the fact that fatalities occurred should have put party on notice of future litigation); Siani v. State Univ. of New York at Farmingdale, No. 09 CV 407, 2010 WL 3170664, at *6 (E.D.N.Y. Aug. 10, 2010) (holding that receipt of letter informing defendants of alleged discrimination and intent to pursue claim triggered duty to preserve).

The obligation extends to "anyone who anticipates being a party or is a party to a lawsuit . . . [and] individuals likely to have discoverable information that the disclosing party may use to support its claims or defenses." Zubulake v. UBS Warburg LLC, 220 F.R.D. 212, 217–18 (S.D.N.Y. 2003). "[A]nyone who anticipates being a party or is a party to a lawsuit must not destroy unique, relevant evidence that *might* be useful to an adversary." In re Complaint of Specialist LLC, No. 16 CV 5010, 2016 WL 6884919, at *2 (S.D.N.Y. Nov. 22, 2016) (emphasis added) (quoting Zubulake v. UBS Warburg LLC, 220 F.R.D. at 217).

There is no question that a party's duty to preserve relevant evidence extends not only to documents but also to "other tangible evidence." R.F.M.A.S., Inc. v. So, 271 F.R.D. at 32. "Evidence that must be preserved includes documents, electronically stored information, and physical evidence that the party knows or reasonably should know is relevant to claims or

11

defenses in the action, is reasonably calculated to lead to the discovery of admissible evidence, or is reasonably likely to be requested during discovery." Id. at 23–24; see also In re Complaint of Specialist LLC, 2016 WL 6884919, at *4 (holding that a tug boat which cost $19,500 per month to store had to be preserved as evidence).

Here, plaintiff filed a complaint with the New York City Commission of Human Rights on July 3, 2019. (Pl.'s Mem. at 9; see also ECF No. 110-8). The complaint alleged, among other things, that defendant Burnam had "groped and slapped plaintiff's buttocks and tapped him with a glass bottle in the groin area." (Pl.'s Mem. at 9) The complaint further alleged that the security camera recordings at the Cotter Barber locations would show the dates of the alleged incidents and demonstrate that the incidents had occurred. (Id.) The complaint also included a statement that the cameras were controlled by defendant Burnam and that Burnam was on notice to preserve and not destroy the recordings. (Id.)

On that same day, July 3, 2019, plaintiff's counsel emailed a copy of the NYCCHR complaint to defendant Burnam and included a written Notice to Preserve. The Notice directed Burnam to "preserve and not destroy all documents or other evidence that pertain to these claims, including, but not limited to, all video surveillance of 563 Manhattan Ave and 321 Graham Ave between May 2019 and July 3, 2019. . . . Failure to preserve and not destroy the foregoing may result in serious sanctions . . . including an adverse inference that the evidence not preserved or destroyed, if reviewed, would demonstrate the truth of the claims against [defendants]." (ECF No. 110-9).

During his deposition, defendant Burnam admitted that he read the Notice to Preserve on the date it was sent – July 3, 2019. (Pl.'s Mem. at 10 (citing Ex. 1, Burnam Tr. at 99–101)). Thus, it is clear that defendant Burnam became aware of the duty to preserve the videos as early

12

as July 3, 2019.  Indeed, he does not appear to dispute his obligation to preserve evidence.  Instead, he claims that he held a "good faith belief and understanding . . . that the DVR recordings existed 'indefinitely or for a lengthy period of time.'"  (Defs.' Mem. at 8 (quoting Ex. 1, Burnam Tr. at 117–18)).  However, Burnam admits that upon receiving the notice he neither "[took] any immediate action [to comply with that duty]," nor attempted to "ascertain [the recording system's] . . . ability to preserve video."  (Ex. 1, Burnam Tr. at 102:11–12, 118:9–120:11).  Rather, according to his Memorandum of Law, defendant Burnam waited until six months after receiving the Notice to Preserve to confirm with installers that footage would remain available (Defs.' Mem. at 8),[9] and he implicitly asks this Court to believe that neither he nor his counsel sought to review the footage during that time.  That assertion does not change the Court's conclusion that Burnam was obligated to preserve the security footage as of July 3, 2019.

   D.   Culpability

Once the Court determines when and to whom the obligation to preserve attaches, the Court must inquire whether the evidence was destroyed with a culpable state of mind.  The Second Circuit has noted that a "culpable state of mind" for purposes of an adverse inference ruling may be demonstrated by "showing that the evidence was destroyed 'knowingly, even if without intent to [breach a duty to preserve it], or negligently.'"  Residential Funding Corp. v. DeGeorge Fin. Corp., 306 F.3d 99, 108 (2d Cir. 2002); see also Elavon, Inc. v. Northeast Advance Techs., Inc., 2022 WL 1175039, at *4.  In the context of discovery, "negligence is a failure to conform to the standard of what a party must do to meet its obligation to participate meaningfully and fairly in the discovery phase of a judicial proceeding."  In re Pfizer, Inc.

---

[9] The Court notes that defendant Burnam has not submitted an affidavit in connection with this motion and there is no citation in Defendants' Memorandum as to where he allegedly made this statement.  Moreover, as noted below, see pp. 15–16 supra, the testimony of William Essling, Jr. indicates that at no time was Burnam told that the system would retain the security footage indefinitely.

Securities Litigation, 288 F.R.D. 297, 314 (S.D.N.Y. 2013). Thus, gross negligence—a higher level of culpability than ordinary negligence—may also be a sufficiently culpable state of mind. Sekisui Am. Corp. v. Hart, 945 F. Supp. 2d 494, 503 (S.D.N.Y. 2013). Although failure to institute some sort of litigation hold is not gross negligence per se, the existence — or lack thereof — of a system for preservation of litigation materials is a relevant consideration. Chin v. Port Auth. of New York & New Jersey, 685 F.3d at 162.

Plaintiff contends that the evidence is clear that defendant Burnam acted with the requisite state of mind necessary to impose sanctions. First, Burnam admitted to having received and read the Notice to Preserve on July 3, 2019. (Pl.'s Mem. at 10). However, Burnam testified that when he received the Notice to Preserve, he "laughed out loud" because he thought it was a "prank." (Pl.'s Mem. at 12 (citing Ex. 1, Burnam Tr. at 99–101)). He further testified that he did not believe he had any obligation to take affirmative steps to preserve the recordings. (Id. (citing Ex. 1, Burnam Tr. at 101–102)). He further contends that he was under the impression that the recordings were preserved and that he could "always get things out of them. No matter what." (Defs.' Mem. at 9 (quoting Ex. 1, Burnam Tr. at 120)). Even when plaintiff quit his job on July 6, 2019, defendant Burnam purportedly still believed the Notice to Preserve was a "prank" – a belief he claimed that he continued to hold after the Associate Director of the New York City Commission on Human Rights served a Notice on Burnam's business addresses relating to plaintiff's pursuit of his claims in court. (Pl.'s Mem. at 13).

Plaintiff notes that Burnam's testimony is belied by the fact that on July 4, 2019, defendant Burnam spoke to plaintiff about the Notice to Preserve and NYCCHR complaint, apologizing for making plaintiff feel uncomfortable. (Id. at 12). Moreover, plaintiff contends that defendant Burnam is a sophisticated businessman who would know to take the Notice

14

seriously. (Id. at 13). As plaintiff notes, Burnam is the sole proprietor of the Williamsburg Cotter Barber store, which has been in operation since 2016. (Id. at 11 (citing Ex. 1, Burnam Tr. at 12, 13)). Not only did defendant Burnam register a trademark with the U.S. Copyright Office for the "Cotter Barber" name, but he expanded his business to two locations, employing 50 people in 2019 alone. (Id.)

Apart from not taking the Notice to Preserve seriously, defendant Burnam testified that he took no action because he "was under the impression" that the recordings would be preserved "indefinitely" (Id. at 13 (quoting Ex. 1, Burnam Tr. at 118)). In response to plaintiff's Second Set of Interrogatories, defendant Burnam claimed that he had no working knowledge of the camera system,[10] and had not received any instruction or support on the operations of the systems. (Id. at 14 (citing ECF No. 110-12)). He further testified that he did not contact any security camera expert for assistance, claiming that he "reached out to several companies" but it was not until the litigation began in November 2019 and after he had retained his lawyer that he started to look into how to preserve the recordings. (Id. (citing Ex. 1, Burnam Tr. at 120, 121)).

Plaintiff argues that Burnam's testimony is belied by the testimony of defendants' other expert, William Essling, Jr., who testified that on August 2, 2019, he informed Mr. Burnam that "given the capacity of the system, video would only be saved for 60 to 90 days." (Pl.'s Mem. at 14–15 (citing Ex. 11, Essling Tr.[11])). He informed defendant Burnam that if he took no action, the recordings would be erased in 60 to 90 days, and he explained how a customer could preserve a recording using a flash drive. (Id. at 15 (citing Ex. 11, Essling Tr.). He also told

---

[10] This assertion was contradicted both by Burnam's own testimony that he was in control of the cameras in his stores (Ex. 1, Burnam Tr. at 159–60), and by Mr. Usaha's testimony that "Burnam used the security cameras for 'training purposes' by playing back the video of his employees performing their jobs (Pl.'s Reply at 15 (quoting Ex. 2, Usaha Tr. at 76:10–25, 77:2–14).

[11] Citations to "Essling Tr." refer to the transcript of William Essling, Jr.'s deposition testimony, taken on July 25, 2022, and attached to plaintiff's Memorandum as Exhibit 11. (ECF No. 110-13).

defendant Burnam on August 2, 2019, that if Burnam needed assistance with the security cameras, he should call Essling, which Burnam never did. (Id.) Moreover, as plaintiff notes, Burnam concedes that he took no steps to preserve the recordings until 120 days later when plaintiff instituted this litigation, and only then did he realize the recordings had been erased. (Id. at 14 (citing ECF No. 33-2)).

In response, defendants contend that there is no evidence that Essling had anything to do with the 563 Manhattan Avenue location, nor did he have any communications with defendant Burnam, apart from the installation of the system at 321 Graham Avenue. (Defs.' Mem. at 9). Thus, defendants argue that whatever Essling told Burnam had nothing to do with preserving the video footage at 563 Manhattan Avenue. (Id.)

Having considered the evidence described above, the Court concludes that Burnam acted with at least negligence, if not gross negligence, when he destroyed or failed to preserve the recordings. Even after the litigation commenced and the dispute over the recordings became apparent, Burnam did not take the equipment offline, nor did he make any effort to make a backup of the DVR units. (Id. at 15). More concerning to this Court is that throughout the course of the continuing discovery dispute over production of these recordings, never once, until forced by Court Order, did defendants notify the Court that the recordings were taped over in the ordinary course in 60-90 days and therefore, since defendant Burnam had taken no steps to preserve the recordings, it was clear that "defendants ha[d] made it impossible for plaintiff to [obtain the DVR units]." (ECF No. 38).

E.   Appropriate Sanction

For the reasons explained above, the Court finds that plaintiff has established: (1) that the security camera recordings at issue existed and likely contained relevant evidence concerning Burnam's alleged sexual misconduct, see pp. 5–8 supra; (2) that Burnam failed to preserve or

16

outright destroyed said recordings and that they cannot be recovered, see pp. 8–10 supra; (3) that Burnam was obligated to preserve the recordings at the time they were destroyed, see pp. 10–13 supra; and (4) that Burnam destroyed or failed to preserve the recordings with a culpable state of mind, see pp. 13–16 supra.[12]  The Court also finds that an adverse inference instruction would serve the purpose of deterring Burnam and other parties from destroying or failing to preserve evidence, appropriately assigning the risk connected with said conduct to Burnam, and putting plaintiff in the same position he would have been in had Burnam appropriately preserved the evidence.

In light of those findings, the Court concludes that an adverse inference is an appropriate sanction for Burnam's conduct.  See Chin v. Port Auth. of New York & New Jersey, 685 F.3d at 162.  The Court further concludes that plaintiff is entitled to submit an application for reasonable attorney's fees and costs stemming from the Spoliation Motion.  See Taylor v. City of New York, 293 F.R.D. 601, 616 (S.D.N.Y. 2013) (stating that "[t]he Court's imposition of spoliation sanctions warrants the award of reasonable attorney's fees and costs to Plaintiff for his efforts with respect to this motion").[13]

## SANCTIONS MOTION

Next, plaintiff moves to sanction defendants pursuant to 28 U.S.C. § 1927 for filing a motion for leave to file a sur-reply in opposition to the Spoliation Motion.  According to

---

[12] The Court's conclusions are bolstered by its own observations of Burnam's changing accounts with respect to why copies of the videos could not be made and his counsel's belated disclosure of the fact that the tapes were no longer accessible, see pp. 8–10 supra, both of which suggest to the Court that Burnam was trying to avoid revealing the nonexistence of the tapes well before he admitted to no longer having them.

[13] On July 10, 2023, plaintiff filed a letter with exhibits in further support of his motion for spoliation sanctions against defendants. (ECF No. 133).  Defendants responded by letter on July 13, 2023, urging the court to rejected plaintiff's "belated 'supplement.'"  (ECF No. 134).  The Court has not considered plaintiff's supplemental filing, finding the evidence initially provided sufficient to rule on the Spoliation Motion.

17

plaintiff, defendants' proposed sur-reply asserted that plaintiff had perjured himself—an assertion that defendants knew was false at the time of filing. (Mot. Sanctions at 1).

Section 1927 permits sanctions on an attorney who "so multiplies the proceedings in any case unreasonably and vexatiously." 28 U.S.C. § 1927. Such sanctions may be imposed, however, "only when there is a finding of conduct constituting or akin to bad faith." In re 60 E. 80th St. Equities, Inc., 218 F.3d 109, 115 (2d Cir. 2000) (quoting Sakon v. Andreo, 119 F.3d 109, 114 (2d Cir. 1997)). The Second Circuit has held that this standard is met only when "the attorney's actions are so completely without merit as to require the conclusion that they must have been undertaken for some improper purpose such as delay." Id. (quoting United States v. International Bhd. of Teamsters, 948 F.2d 1338, 1345 (2d Cir.1991)). That standard has not been satisfied here.

As defendants note in response to plaintiff's Motion, they withdrew the filing at issue approximately 17 hours after it was filed and before plaintiff filed the Motion for Sanctions. (ECF No. 119 at 1; see also ECF No. 115). Whatever the cause of defendants' seemingly erroneous claims in the filing at issue, the Court cannot conclude, given defendants' prompt and voluntary withdrawal of the document, that it was filed in bad faith or with the aim of delaying these proceedings. See, e.g., Unite Here v. Cintas Corp., 500 F. Supp. 2d 332, 335–36 (S.D.N.Y. 2007) (denying sanctions under 28 U.S.C. § 1927 where plaintiff voluntarily discontinued its meritless action). Plaintiff's Motion for Sanctions under 28 U.S.C. § 1927 is therefore denied.

## MOTION TO COMPEL PAYMENT

Finally, defendants move to compel plaintiff to pay defendants $2,319.01 to cover defendants' cost of obtaining deposition transcripts. (Mot. Compel at 1). Defendants contend that plaintiff promised to provide courtesy copies of said transcripts but ultimately did not do so, thus requiring defendants to order the transcripts at their own expense. (Id. at 1–2). Plaintiff

18

does not deny the basic premise of the Motion—that he originally promised to provide copies of the transcript but later rescinded that promise. (ECF No. 122). However, defendants have cited no authority to suggest that plaintiff was obligated to provide defendants with copies of the transcripts, or that this Court has any basis for sanctioning plaintiff for reneging on his original promise to do so. Defendants' motion therefore fails.

## CONCLUSION

For the reasons noted above, the Court GRANTS the Spoliation Motion and holds that (1) Defendant Brian Burnam has intentionally spoliated evidence in the form of security camera footage; (2) as an appropriate sanction for that conduct under Rule 37(e)(2) of the Federal Rules of Civil Procedure, the jury should be instructed that they may infer the spoliated evidence was unfavorable to Burnam; and (3) plaintiff may make an application for reasonable attorney's fees and costs related to the spoliation. Further, the Court DENIES plaintiff's Motion for Sanctions pursuant to 28 U.S.C. § 1927, and DENIES defendants' Motion to Compel plaintiff to pay defendants' deposition transcript costs.

**SO ORDERED.**

Dated: Brooklyn, New York
March 29, 2024

*Cheryl L. Pollak*
Cheryl L. Pollak
United States Magistrate Judge
Eastern District of New York