ZACHARY J. LISZKA, ESQ.

33 NASSAU AVENUE, FL 2, BROOKLYN, NEW YORK

ZACH@EMPLOYEELAWYER.NYC

(347)762-5131

April 8, 2024

**VIA ECF**
Hon. Eric R. Komitee, USDJ
United States District Court, Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

  Re: *Ahamed v. 563 Manhattan Inc., et al* - 19-cv-06388-EK-CLP
     Objection to Spoliation Sanctions Memorandum and Order (ECF 149)
     Pursuant to FRCP 72

Dear Judge Komitee,

  Along with Crumiller, P.C., this law office represents Plaintiff Ahamed in the case referenced above. By this letter-motion, pursuant to Fed. R. Civ. P. 72, Plaintiff respectfully objects to part of the memorandum and order (ECF 149) of Chief Magistrate Judge Pollak issued on March 29, 2024 granting Plaintiff's motion which sought an adverse inference instruction for intentional spoliation of ESI under Fed. R. Civ. P. 37(e)(2).

  Although the memorandum and order (ECF 149) correctly granted Plaintiff's motion in its entirety, it did so under a legal standard expressly superseded by statute in 2015. Plaintiff is concerned that if the decision to give an adverse inference instruction is premised upon a legal standard superseded by statute, an unnecessary appeal will follow trial. Therefore, Plaintiff asks Your Honor to modify the memorandum and order, make findings under the correct legal standard, and otherwise affirm the memorandum and order (ECF 149).

  **I.** **Standard of Law**

  Pursuant to Fed. R. Civ. P. 72(a), upon objection, a district judge may modify or set aside any part of an order that is clearly erroneous or is contrary to law. Fed. R. Civ. P. 72(a). "A ruling is clearly erroneous where, although there is evidence to support it, the reviewing court is left with the definite and firm conviction that a mistake has been committed. An order is contrary to law when it fails to apply or misapplies relevant statutes, case law or rules of procedure." *Fashion Exch. LLC v. Hybrid Promotions, LLC*, No. 14-CV-1254 (SHS), 2021 WL 1172265, at *1 (S.D.N.Y. Mar. 29, 2021) (citation and quotations omitted). That is precisely the issue in the instant matter.

  Here, the memorandum and order (ECF 149) correctly concluded that an adverse inference was warranted under Fed. R. Civ. P. 37(e)(2), but failed to make any findings under the "intent to deprive" standard applicable since 2015.

  "In the context of adverse inference instructions based on a failure to preserve electronically stored information, the [2015] amendments to Rule 37(e) replaced the culpable state

of mind element under *Residential Funding* with a more stringent intent to deprive requirement." *Ungar v. City of New York*, 329 F.R.D. 8, 12–13 (E.D.N.Y. 2018), aff'd, No. 21-1384-CV, 2022 WL 10219749 (2d Cir. Oct. 18, 2022)(quotations omitted). *See* Fed. R. Civ. P. 37(e)(2), Advisory Committee Note, 2015 Amendments (noting that the provision "rejects cases such as [*Residential Funding*] that authorize the giving of adverse-inference instructions on a finding of negligence or gross negligence").

Under the current standard, "a party's conscious dereliction of a known duty to preserve electronic data is both necessary and sufficient to find that the party acted with the intent to deprive another party of the information's use under Rule 37(e)(2)." *Ungar v. City of New York*, 329 F.R.D. 8, 12–13 (E.D.N.Y. 2018), *aff'd*, No. 21-1384-CV, 2022 WL 10219749 (2d Cir. Oct. 18, 2022. "Whether the spoliator *affirmatively* destroys the data, or *passively* allows it to be lost, is irrelevant; it is the spoliator's state of mind that logically supports the adverse inference." *Id.*(emphasis in the original). *See Moody v. CSX Transportation, Inc.*, 271 F.Supp.3d 410, 431 (W.D.N.Y. 2017) ("While knowing they had a duty to preserve the event recorder data, defendants allowed the original data on the event recorder to be overwritten .... On this record, the Court finds that defendants acted with the intent to deprive [plaintiff] of the use of the event recorder data"); *Ottoson v. SMBC Leasing and Finance, Inc.*, 268 F.Supp.3d 570, 582-583 (S.D.N.Y. 2017) (conscious failure "to take any reasonable steps to preserve" relevant communications satisfies the level of intent required of Rule 37(e)(2)) (collecting cases)." *See e.g. Ungar* at 12-13, fn. 2("[H]ad Defendants received and ignored a request to preserve the video from the Assistant District Attorney prosecuting Marte's case, an adverse inference instruction would have been appropriate."). "A court may infer that a party acted with an intent to deprive on the basis of circumstantial evidence." *Mule v. 3-D Bldg. & Constr. Mgmt. Corp.*, No. CV181997JSAKT, 2021 WL 2788432, at *12 (E.D.N.Y. July 2, 2021) citing *CAT3, LLC v. Black Lineage, Inc.,* 164 F. Supp. 3d 488, 500 (S.D.N.Y. 2016)("circumstantial evidence may be accorded equal weight with direct evidence and standing alone may be sufficient to support even a determination that requires proof beyond a reasonable doubt").

## II.     Summary of Application

The evidence cited in Plaintiff's briefing on the spoliation motion (ECF 110-1 and ECF 114) meets the "intent to deprive" standard because the evidence clearly demonstrates Defendant Burnam consciously disregarded his legal obligation to preserve the security camera video for Plaintiff's use in litigation.

Defendant Burnam testified that on July 3, 2019, he received a verified NYCCHR complaint accusing him of sexually molesting Plaintiff in view of his shops' security cameras and texting Plaintiff and a manager "[Plaintiff] is a fag, [manager] fire him", among other things, as well as a notice to preserve his shops' security camera footage for Plaintiff's use in litigation. ECF 110-1, p. 9-10. Defendant Burnam testified that the following morning, he discussed the verified NYCCHR complaint with Plaintiff, and apologized to Plaintiff for making him feel "uncomfortable". ECF 110-1, p. 12. Defendant Burnam also expressed serious concern to Plaintiff that Plaintiff's lawsuit would be "detrimental" to his business and his clients. ECF 114, p. 8. A few days later, Plaintiff quit his job with Defendants. ECF 110-1, p. 3. And, a few weeks later, the Associate Director of the NYCCHR served Defendant Burnam with notice that Plaintiff intended

to sue him in court and attached a copy of the verified NYCCHR complaint. *Id.* Defendant Burnam testified that at no time did he contact Plaintiff's counsel to discuss the matter, although Plaintiff's demand letter (which was attached to the notice to preserve and verified complaint) directed him to do so. ECF 114, p. 10. On this evidence, the court can reasonably infer that Defendant Burnam knew of his duty to preserve the security camera footage for Plaintiff's use in litigation.

Incredibly, Defendant Burnam testified that he believed the verified complaint and notice to preserve were simply a "prank", and therefore, he testified he "wholeheartedly" believed he had no duty to preserve the video, ECF 114, p. 5-6, but the court should not credit this incredible claim for the reasons stated above. Thus, because Defendant Burnam conceded he took no steps to timely preserve, the court can reasonably infer that Defendant Burnam consciously disregarded a known duty to preserve the security camera footage for Plaintiff's use in litigation.

Furthermore, just weeks after Defendant Burnam first read the verified NYCCHR complaint and notice to preserve, his security camera installer warned him that if he took no action, the DVR unit which recorded the security camera footage would automatically overwrite itself in 60 to 90 days. ECF 110-1, p. 14-15, ECF 149, p. 15. And Defendant Burnam testified that he knew both of his stores employed DVR technology to record security camera footage. ECF 114, p. 7. The installer also explained to Defendant Burnam how to back up the video using a flash drive and that if Defendant Burnam needed any assistance with this, to call, but Defendant Burnam did not call. ECF 110-1, p. 15; ECF 149, p. 15-16. Thus, although Defendant Burnam claimed that he believed the DVR units retained recordings "indefinitely", ECF 110-1, p. 14, this is belied by the above testimony of his own installer. The installer testified that he tells all his customers about the automatic overwrite and back up features of the DVR units he installs. ECF 110-1, p. 14-15.

Moreover, once litigation began, Defendant Burnam's conduct continued to demonstrate a disregard for his legal obligations. Defendant Burnam, through counsel, defiantly refused to timely take the DVR units offline or back them up. ECF 110-1, p. 15-16; ECF 114, p. 11. Although Defendant Burnam swore under oath he did not possess any "working knowledge" of how to save the security camera footage from his DVR units, his own manager testified that Defendant Burnam routinely recorded his employees' interactions and played them back for "training purposes" ECF 114, p. 15; and another manager testified that Defendant Burnam liked to watch the security camera monitor in his office and find out "something bad about people". ECF 110-1, p. 7. And, although in his brief, Defendant Burnam could not recall where his own security cameras were located in relation to the barista counter (where most of the alleged sexual molestation occurred), ECF 113, p. 7, fn. 1, had Defendant Burnam not demolished the barista counter during the pendency of this litigation without giving notice to Plaintiff, Defendant Burnam would not have been able to make this absurd claim. ECF 114, p. 16-17. And, according to the court, Defendant Burnam, through counsel, made it "impossible" for Plaintiff to attempt to retrieve the overwritten data through forensic analysis by refusing to produce the DVR units to Plaintiff, even when ordered by the court. ECF 38; ECF 114, p. 11.

In sum, Plaintiff asks Your Honor to modify the memorandum and order (ECF 149) and make findings under the "intent to deprive" standard, and otherwise affirm the memorandum and order (ECF 149) directing the issuance of an adverse inference instruction, and payment of associated attorneys' fees, upon application by the Plaintiff.

3

4

      Furthermore, Plaintiff respectfully asks that Your Honor expedite this matter in accordance with the principles of FRCP 1 considering the motion (ECF 110) upon which the objected-to memorandum and order (ECF 149) is based was filed over a year ago, discovery is complete, and the parties filed a proposed JPTO in November 2023 (ECF 145).

      Thank you for your attention to this matter.

                                            Respectfully submitted,

                                            Zachary J. Liszka, Esq.